UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION


| | | |
|---|---|---|
| LANCE KENDALL WHITEHEAD | : | CIVIL ACTION NO. 2:15-cv-2096 |
| DOC #366854 | | SECTION P |
| | | |
| VERSUS | : | JUDGE TRIMBLE |
| | | |
| VERNON PARISH CORRECTIONAL | | |
| FACILITY ET AL. | : | MAGISTRATE JUDGE KAY |


<u>REPORT AND RECOMMENDATION</u>


Before the court is a civil rights complaint filed *in forma pauperis* by *pro se* plaintiff Lance Kendall Whitehead ("Whitehead") [doc. 10]. At the time of filing Whitehead was an inmate in the custody of Louisiana's Department of Public Safety and Corrections and was incarcerated at Richland Parish Detention Center in Rayville, Louisiana. However, he complains of events that occurred while he was incarcerated at Vernon Correctional Facility ("VCF") in Leesville, Louisiana.

Whitehead names the following as defendants: VCF; Vernon Parish Sheriff's Office ("VPSO"); Vernon Parish Deputy Sheriff ("VPDS")/VCF Warden Darlene Burns ("Warden Burns"); VPDS/VCF Assistant Warden Mathew Rhodes ("Rhodes"); VPDS/VCF Medical Officer Burns ("MO Burns"); VPDS/VCF Captain Larry Bailey ("Bailey"); VPDS/VCF Sergeant Kody Smith ("Smith"); VPDS/VCF Shift Captain Borders ("Borders"); VPDS/VCF Shift Captain Basco ("Basco"); and Vernon Parish Sheriff Sam Craft ("Craft").[1] Doc. 10, att. 1.

---

[1] Whitehead named Lieutenant Roman in his original complaint [doc. 1, p. 4] but did not mention him in his amended complaint [doc. 10, att. 1]. The court assumes that the omission/deletion of Lt. Roman was intentional and that he is no longer a defendant in this matter.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

# I.
## BACKGROUND

Whitehead contends that on September 8, 2014, he informed Capt. Bailey that he was having severe abdominal pain. Doc. 10, att. 1, p. 4. He states that Bailey instructed him to "relax and take it easy." *Id.* Later that afternoon Whitehead claims that he told Bailey that he could hardly breathe, prompting Bailey to send him to his dorm. *Id.* On September 9, 2014, at approximately 8:00 a.m., Whitehead contends that he informed Bailey that the pain was so bad that he could barely walk and that it felt like he needed to urinate and defecate "even though he knew he didn't have to." *Id.* Bailey instructed him to go back to the dorm if he felt that bad. Doc. 1, p. 4. Instead, Whitehead states that he continued to work until approximately 10:00 a.m., when he also alerted Rhodes to his symptoms. Doc. 10, att. 1, p. 4. Rhodes then spoke to Medical Officer Burns about the situation. *Id.* Around 10:30 a.m., Whitehead states that Rhodes asked him if he would take a suppository. *Id.*

Whitehead claims that he went to medical at 11:00 a.m. and explained his condition to MO Burns. *Id.* at 5. He states that MO Burns gave him a suppository, Gas X, castor oil, and Ex-Lax, but did not examine him or call trained medical personnel. *Id.* Whitehead contends that by 5:00 p.m., he was on his bed "doubled over in pain" which prompted other inmates to call for an officer. *Id.* Whitehead states that he was taken to medical via wheelchair at 5:30 p.m. but complains that he was placed in the hallway with no medical staff attending to him. *Id.* He claims that Basco called Warden Burns at 6:00 p.m. and that Burns instructed that Whitehead be taken to the hospital. *Id.* Defendants Borders and Smith were then summoned to transport Whitehead to a hospital in

Shreveport, Louisiana. *Id.* Whitehead states that Borders arrived at VCF within fifteen minutes but that Smith took two hours to get there as he finished watching a movie with his girlfriend. *Id.*

Whitehead states that he arrived in Shreveport around 11:30 p.m. and was immediately examined by a nurse, who informed him that he had acute appendicitis. *Id.* at 5–6. Following an ultrasound, he was taken into surgery. *Id.* When he woke up from surgery, he states that he was in six-point restraints. *Id.* He alleges that he asked the hospital security officer why he was restrained and was told that it was because he was in jail for murdering his wife and children. *Id.* Whitehead claims that he told the security officer to call Warden Burns and she would tell the officer that he was not in jail for murder and that he was a trustee. *Id.* The security officer was told on two occasions that Warden Burns wanted to speak to her but she refused. *Id.* at 6–7. Whitehead states that at some point he went to sleep and when he woke up a different security officer was removing the restraints. *Id.* at 7.

Whitehead contends that the doctor told him that his appendix had ruptured, necessitating three incisions instead of one. *Id.* He claims that he was also told that had prison staff waited much longer to bring him to the hospital, he would have died. *Id.* Approximately four days after surgery, Whitehead informed the doctor that he had pain on his left side. He claims that a CAT scan revealed a pocket of puss on the left side of his stomach. *Id.*

Whitehead returned to VCF on September 20, 2014. *Id.* at 8. He claims that defendant Smith apologized for telling the hospital staff that he [Whitehead] was in jail for murdering his wife and children. *Id.* Whitehead states that Warden Burns told him that she called the hospital to "clear that up and for the hospital to take good care of plaintiff." *Id.* He contends that Warden Burns had a meeting with Bailey, Rhodes, Borders, and Smith on September 20, 2014, but that he was not aware of any disciplinary action taken. *Id.* He notes that defendant Borders left the meeting

weeping. *Id.* Whitehead states that he filed a grievance regarding the matter on September 20, 2014, but that he did not receive a response. *Id.*

Whitehead claims that on September 22, 2014, Bailey told him to change a security light despite the duty status issued by the hospital. *Id.* at 9. He contends that when Warden Burns saw him on the ladder, she asked if anyone else was available to change the light and called defendant Rhodes. *Id.* Whitehead also contends that on September 24, 2014, two officers that were friends of defendant Borders requested "Warden Whitehead" over the radio causing "animosity from other inmates and some of the officers." *Id.* He alleges that the animosity "was to the point plaintiff no longer felt safe at VCF" so he requested a transfer. Doc. 10, att. 1, p. 10.

Whitehead states that he filed additional grievances relative to this matter on September 25, 2014, October 1, 2014, and mid-October 2014, but did not receive responses to same. *Id.* at pp. 9–10.

Whitehead alleges that the medical staff at Richland Parish Detention Center told him that his irregular bowel movements were caused by scar tissue from the ruptured appendix and that the pain in his lower abdomen and rectum "might stop after a while." *Id.* at 10.

Whitehead seeks declaratory relief, and compensatory and punitive damages against the defendants for the following reasons:

> (1)    Vernon Parish Sheriff's Office and Sheriff Sam Craft: Physical and emotional injury resulting from the failure to provide adequate medical services and care;
>
> (2)    Vernon Correctional Facility and Warden Burns: Physical and emotional injury for the failure to provide competent medical personnel;
>
> (3)    Defendants Rhodes, Bailey, Borders, Basco, Smith, and Medical Officer Burns: Acting negligently and with deliberate indifference to Whitehead's serious medical needs, resulting in physical and emotional injury; and

> (4)     Defendants Border and Smith: Acting with negligence and
> deliberate indifference to Whitehead's serious medical needs by
> delaying medical treatment for at least two hours, and acting with
> deliberate indifference and malicious intent by telling hospital staff
> that he was convicted of murder despite knowing that he was an A-
> Class Trustee, resulting in physical and emotional injury.

Doc. 10, att. 1, pp. 11–17.

## II.
### LAW AND ANALYSIS

### A. *Frivolity Review*

Whitehead has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. This act directs a district court to dismiss an action if the court determines that it is frivolous or malicious or fails to state a claim on which relief may be granted. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing 28 U.S.C. § 1915(e)(2)(B)(i) and (ii)).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley*, 157 F.3d at 1025 (failure to state a claim).

### B. *42 U.S.C. § 1983*

Federal law provides a cause of action against any person who, under the color of law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus the initial question is whether the plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim that would entitle plaintiff to relief. In order to hold the defendants

liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law; that is, that the defendant was a state actor. *West v. Atkins*, 108 S.Ct. 2250, 2254–55 (1988).

### C.  Medical Care Claims

Whitehead claims that his medical care was delayed and inadequate. In order to show a constitutional violation relating to their medical care, convicted prisoners must establish that the refusal or delay in providing care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 97 S.Ct. 285, 292 (1976). Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458–59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459.

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). In *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981), the court stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a course of treatment was unsuccessful or that a prisoner disagrees with the treatment chosen does not elevate a claim to a constitutional dimension. *See Varnado v. Lynaugh*, 920 F.2d

320, 321 (5th Cir. 1992). Furthermore, the fact that a plaintiff continues to suffer pain from his condition is insufficient to establish that a constitutional violation has occurred. *See Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

The facts of this matter clearly do not demonstrate that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly or wantonly disregarded his medical needs.  Whitehead, by his own admission, received substantial medical care and prison staff addressed his symptoms as they arose. The evidence before the court simply does not support a finding of deliberate indifference.

Furthermore, his allegation that defendant Smith was watching a movie and took a longer to arrive at VCF than defendant Borders, even if true, does not rise to the level of a constitutional violation. At best, such action may amount to a state law claim for negligence, a tort. However, as previously stated negligence, gross negligence, and dissatisfaction over what constitutes proper medical care does not state a § 1983 claim.

Accordingly, Whitehead's allegations of insufficient medical care at VCF simply do not rise to the level of cruel and unusual punishment under the Eight Amendment. His medical treatment claims should thus be dismissed with prejudice as frivolous.

### D. Defamation

Whitehead alleges that defendants Border and Smith told hospital staff that he was convicted of murder despite knowing that he was an A-Class Trustee. He states that the complained of action resulted in physical and emotional injury.

It is well established that there is no constitutional right to be free from slander or defamation. *Paul v. Davis*, 96 S.Ct. 1155, 1166 (1976). Thus libel and slander are not cognizable under 42 U.S.C. § 1983, because a defamation claim does not involve the deprivation of any rights, privileges or immunities which are secured by the Constitution or laws of the United States.

*Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir. 1980). Accordingly, relief cannot be granted for this claim and it should be dismissed.

### E. *Improper Parties*

The court notes that Vernon Parish Sheriff's Office and Vernon Correctional Facility do not have the capacity to be sued. Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether CSP has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Ann. art. 24. In Louisiana, neither correctional centers nor sheriff's departments are legal entities capable of suing or being sued as the State of Louisiana has not granted them juridical status. *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988); *McCann v. Louisiana*, 2012 WL 1309251, *2 (W.D. La. Mar. 12, 2012). Therefore Whitehead's suit against VPSO and VCF fails to state a claim upon which relief can be granted and he should dismiss his claims against it.

### F. *Supervisory Liability*

Whitehead has not stated a sustainable claim against VCF Warden Darlene Burns. It is clear that this party is named in her supervisory capacity and well settled that supervisory officials may not be held liable under § 1983 under the doctrine of *respondeat superior*. *See Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992). To be liable under § 1983 a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Whitehead has named Warden Burns and Sheriff Craft as defendants but has not alleged personal involvement in his medical care nor that

either party implemented a policy that acted as a deprivation of constitutional rights. Accordingly, his claims against them should be dismissed.

## III.
### CONCLUSION

For reasons stated,

**IT IS RECOMMENDED** that Whitehead's civil rights complaint **be DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. **Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 29th day of June, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE